## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| EARNEST DURANT, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-0025 (ABJ) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## <u>MEMORANDUM OPINION</u>

In this action, plaintiff, Earnest Durant, Jr., alleges that his former employer, the District of Columbia Government Department of Corrections ("DOC;" "department"), retaliated against him for prior protected activities and subjected him to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*[1] Before the Court is defendant District of Columbia's motion for summary judgment, [Dkt. # 67], as well as a motion to strike a supplemental Rule 26(a)(2) statement that plaintiff filed out of time, [Dkt. # 79]. While the Court finds that plaintiff has identified at least one action by his employer that is sufficiently adverse to be actionable under Title VII, he has failed to demonstrate that a reasonable jury could find that defendant's justification for that action is mere pretext and that the real reason was retaliation for plaintiff's prior protected activities. The Court also finds that plaintiff has failed to demonstrate that there is a genuine dispute of material fact as to whether he was forced to endure a hostile work environment in retaliation for his filing of

---

[1] Although Count I of the amended complaint alleges discrimination on the basis of age and race under Title VII, plaintiff has agreed to withdraw those claims.  Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. # 69] ("Pl.'s Op.") at 3.  Accordingly, the Court will grant defendant's motion for summary judgment on Count I.

Title VII claims.  At bottom, plaintiff has done very little to supply the Court with the *facts* that are needed at this point in the proceedings, and he simply reiterates his allegations.  Accordingly, the Court will grant summary judgment for defendant in full and will deny the motion to strike as moot.

## BACKGROUND

The following facts are undisputed, except where noted.[2]  At all times relevant to this case, plaintiff was employed with the DOC.  Durant Dep., Ex. 1 to Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt. # 67-4] at 9:9–13, 28:19–22.  He eventually attained the position of a Grade 11 Criminal Investigator in the Warrant Squad in 2001, following his participation in the class action, *Neal v. Director, Department of Corrections*, Civil No. 93-2420 (D.D.C.).  Durant Dep. at 9:9–13; Exs. A.1, A.3 to Pl.'s Opp. [Dkt. # 69-5, 69-7].  In that case, another court in this district found in favor of a class of male and female employees of the DOC who suffered retaliation for opposing the department's practices of sexual harassment.  *Neal v. Director*, Civ. A. No. 93-2420 (RCL), 1995 WL 517248, at *1 (D.D.C. Aug. 9, 1995).[3]

---

2      The sparse evidentiary record presented by the parties leaves the Court with an incomplete picture of the factual background and little knowledge about what if anything was uncovered in discovery.  Even though this case is at the summary judgment stage, and despite the requirements under the local rules that "[e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue *which shall include references to the parts of the record relied on to support the statement*," and "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, *which shall include references to the parts of the record relied on to support the statement*," LCvR 7(h)(1) (emphasis added), defendant's statement of undisputed material facts points to many allegations in the amended complaint, Ex. 1 to Def.'s Mot. for Summ. J. [Dkt. # 67-1] ("Def.'s Mot."), and plaintiff's statement of disputed facts contains only a single citation to the record, Attach. 1 to Pl.'s Opp. [Dkt. # 69-1].

3      The transcript of plaintiff's deposition reveals that plaintiff was promoted to his position upon the direction of Alan Balaran, the Special Master in the *Neal* case.  Durant Dep. 28:16–22, 30:12–20.

On June 14, 2007, plaintiff was placed on administrative leave based on allegations that he had permitted an unauthorized person to enter the DOC office to make photocopies of union documents the day before.  Notice of Administrative Leave, Ex. B to Pl.'s Opp. [Dkt. # 69-8]; Memorandum from Wanda Patten to Devon Brown Regarding Unauthorized Use of Office Xerox Machine, Unauthorized Admittance of Personnel to the OIA, Ex. C to Pl.'s Opp. [Dkt. # 69-9]; Am. Compl. ¶¶ 16–18.  In the wake of that employment action, plaintiff began filing unfair labor complaints with the Public Employee Relations Board ("PERB") and later, discrimination complaints with the D.C. Human Rights Commission ("DCHRA") and the United States Equal Employment Opportunity Commission ("EEOC").  Those complaints and the allegations therein are summarized below.  Also summarized are the remaining adverse actions that plaintiff claims to have suffered[4]:

- June 27, 2007:  Plaintiff filed an unfair labor practice complaint with the PERB, challenging his administrative leave. *See Durant v. District of Columbia Dept. of Corr.*, Case Nos. 07-U-43 & 08-U-57, Opinion No. 1286, at 1 (PERB May 30, 2012).[5]

- August 1, 2007:  Plaintiff filed a second unfair labor practice complaint with the PERB, which was consolidated with the first. *Id.* at 3.

- August 10, 2007:  According to the findings of the PERB, plaintiff was informed that he should return to work on August 13, 2007, based on an internal investigator's conclusion that no discipline should be imposed for the June 13 incident. *Id.* at 10.  However, he was told to report to the records office at the D.C. Jail instead of the OIA headquarters at 300 Indiana Avenue Northwest. *Id.* at 10–11.

---

[4]    The Court has attempted to reconstruct this chronology based on the documents provided by plaintiff and defendant as exhibits.  These documents, however, are not well-organized or well-labeled, which has made the Court's job particularly difficult.

[5]    This complaint was eventually amended to include claims that the August 13, 2007 transfer of offices, an April 2007 denial of reinstatement to a multi-agency taskforce, and a low performance rating on a 2007–2008 performance evaluation report were all retaliatory unfair labor practices. *Id.* at 13.

- August 13, 2007:  According to the findings of the PERB, plaintiff was reassigned to the Community Corrections Office at Department headquarters in the Grimke Building, located at 1923 Vermont Avenue Northwest.  *Id.* at 11.

- October 17, 2007:  Plaintiff submitted a "memorandum" to Fred Staten, whom he identifies as the EEOC Coordinator for DOC.  The memorandum states that "[a]ttached is an EEOC Complaint to be filed against the Department of Corrections . . . ."  The memorandum concerns the June 13, 2007 photocopy incident, the June 14 to August 13, 2007 period of administrative leave, the transfer out of the Warrant Squad Offices, and DOC's refusal to furnish plaintiff with documents about the internal investigation of the photocopy incident that plaintiff claimed he needed in order to "pursue this serious matter through other appropriate channels including EEOC and PERB on charges of discrimination and retaliation."  Ex. E to Pl.'s Opp. at 1–3.  While Durant recites the word "discrimination" in his memorandum, he does not make any references to his status as a member of a protected class or to any actions supposedly taken against him on those grounds; like the PERB complaints, the focus of the memorandum was the administrative leave and the events that transpired thereafter.  *See id.*

- October 31, 2007:  Plaintiff submitted a second "memorandum" to Fred Staten.  *Id.* at 4–6.  The memorandum states, "[t]his complaint is filed under the provisions of the Human Rights Act of 1977 [concerning "coercion or retaliation"] . . . against Supervisory Criminal Investigator Wanda Patten[.]"  *Id.* at 4.  It alleges "coercion or retaliation" and states that the complaint "concern[s] an alleged incident which in part is based upon retaliation for being involved in protected activities . . ." and the department's refusal to furnish him with documents from the internal investigation of the photocopy incident.  *Id.* at 4.[6]

- November 9, 2007:  Plaintiff submitted a third "memorandum" to Fred Staten.  *Id.* at 8–10.  The memorandum states that it is being filed "under the provisions of the Human Rights Act of 1977 [concerning 'coercion or retaliation'] . . . and is filed against Supervisory Criminal Investigator Wanda Patten[,] Department of Corrections Internal Affairs Division and against the Department of Corrections in the support of her continued actions[.]"  *Id.* at 8.  It addresses the same workplace grievances addressed in the previous memoranda, as well as other allegations of workplace grievances.  *Id.* at 8–10.

- November 14, 2007:  Plaintiff submitted a fourth "memorandum" to Fred Staten.  *Id.* at 11–13.  Again, the memorandum states, "[t]his complaint is filed under the provisions of the Human Rights Act of 1977" concerning "[c]oercion or [r]etaliation."  *Id.* at 11.  This memoranda was filed against Wanda Patten and Devon Brown, who is identified as the Director of the Department of Corrections.  *Id.*  It addresses the same workplace grievances addressed in the previous memoranda, as well as other allegations of

---

6       Plaintiff also submits a D.C. Department of Corrections "pre-complaint form" dated October 31, 2007.  Ex. E to Pl.'s Opp. at 7.

workplace grievances.  It stated that the complained-of actions were "based solely upon my participation into legally protected activities."  *Id.* at 12.

- November 28, 2007:  Plaintiff submitted his first memorandum to the D.C. Office of Human Rights ("DCOHR").  *Id.* at 14–15.  The memorandum states that "[a]ttached is a copy of the Resolution Letter, dated November 15, 2007 from Mr. Fred Staten, EEO Officer . . . and in accordance with provisions of the Human Rights Act of the District of Columbia, my complaint is being forwarded for further action in that agency . . . ."  *Id.* at 14.  The memorandum first describes the memoranda that plaintiff had submitted to Fred Staten.  It further states that "I am a member of a prior 'protected group' action filed against the Department of Corrections [in *Bessye Neal*] and am concerned over this action as a continuation of the retaliation and disparate treatment continued to be received as a result of my participation."  *Id.* at 15.  Attached to the memorandum is a "resolution letter" from Fred Staten, addressed to plaintiff, dated Nov. 15, 2007.  It is signed by Staten and plaintiff.  The resolution letter explains that plaintiff met with an EEO officer on November 15, 2007 and was provided with a copy of the documents that he had requested (a copy of the Investigation Report and the eight attachments).  *Id.* at 16.  It also provides that if plaintiff believes the agency has not complied with the terms of the informal resolution, he must contact the DCOHR within fifteen days of the final interview and file a formal complaint.  Finally, it states that the signatures on the document signify that both parties have agreed to the terms of the informal resolution of the dispute.  *Id.* at 15.

- December 9, 2007:  Plaintiff submitted a memorandum to the Washington Field Office of the EEOC and to Mr. Alan Balaran, Esq.  *Id.* at 18–20.  The memorandum states that "[t]his is a request that a formal complaint be filed against the District of Columbia Government, Department of Corrections and specifically against Devon Brown, Director, Patricia Britton, Deputy Director, Joan Murphy Office of Special Projects and Wanda Patten, Supervisor Internal Affairs[.]"  *Id.* at 18.  It alleges that the June 14 administrative leave and the post-August 13, 2007 transfer of offices were imposed in retaliation for plaintiff's *Neal* activities.  *Id.* at 19–20.

- April 1, 2008:  Plaintiff submitted a memorandum to the Washington Field Office of the EEOC, Balaran, and the DCOHR, which is labeled "Amended EEOC Complaint."  *Id.* at 21–22.  It requests that the December 9 "complaint" be amended to reflect "continued retaliation that has adversely affected my terms and conditions of employment within the Department of Corrections . . . and a deliberate refusal by Devon Brown, Director Department of Corrections to resolve approximately four (4) separate complaints filed under provisions of the Human Rights Act of 1977."  *Id.* at 22.

- August 1, 2008:  Plaintiff submitted a memorandum to the Washington Field Office of the EEOC, which is labeled "2d Amended Equal Employment Opportunity Complaint."  *Id.* at 25–27.  It requests that his December 9, 2007 "complaint" be amended to "include continued and additional violations of Section 704(a), Title VII of the Civil Rights Act of 1964. The Civil Rights Act of 1871 Title 42 Section 1983 U.S.C. and the Age Discrimination in Employment Act (AEDA) [sic] Public Law 20-2272[.]"  *Id.* at 27.   In

addition to recounting the same incidents described in the December 9 memorandum, it alleges that the same people named in the previous complaint engaged in "continued disparate treatment and other unlawful employment practices, which individually, collectively, maliciously and illegally over a period of time, have deprived [him] of [his] rights under color of law, directed, allowed, encouraged and participated in an [sic] more sophisticated, severe, recurring and pervasive pattern and practice of retaliation, reprisals, creation of a disparate, discriminatory and dual standard hostile work environment, issuance of and involvement of defamatory statements or actions that has deliberately deprived [him] of equal employment opportunities, intentionally inflicted extreme and severe emotional distress."  *Id.*

- January 27, 2009:  Plaintiff submitted a memorandum to Eugene T, Reed Jr., EEOC Intake Officer for the Washington Field Office of the EEOC, which indicates that it is intended to be a third amended complaint to the EEOC.  *Id.* at 28–34.  The memorandum explains that plaintiff had not received any response "concerning the status of [his] complaint[.]"   *Id.* at 29.   It further alleges that the allegedly "discriminatory and retaliatory practices of Respondent Department of Corrections . . . still continue[.]"  *Id.*  It also requests that the December 9 "complaint" be amended to include new and continued allegations of discrimination on the basis of age and retaliation on the basis of testimony given in hearings before the Public Employees Relations Board in 2008.  *Id.*  Although it provides a detailed description of his alleged mistreatment through August 2007 transfer of offices, it states only that "[w]ithout going into any further details, these actions have continued to this date."  *Id.* at 33.

- January 6, 2010:  Plaintiff filed his original complaint in this action.  [Dkt. # 1].

- March 6, 2010:   Plaintiff filed an official Charge of Discrimination with the EEOC, which alleges discrimination based only on retaliation.  Attach. 1.H to Ex. 6 to Def.'s Mot. [Dkt. # 67-4].  It recounts that plaintiff filed "an Amended EEOC Charge Form 5, EEOC Complaint Number 570-2008-00315" on August 13, 2009, which contained allegations that he "had been retaliated against by the Department of Corrections as a result of 'prior' and 'current' participation into 'protected' activities[.]"  *Id.* at 1.  It also recounts that on October 10, 2009, plaintiff received a right to sue letter dated October 6, 2009.[7]  It further alleges that "[a]s a direct result of filing a federal EEOC civil suit before the US District Court on January 6, 2010 . . . I was the object of additional acts of retaliation and reprisals."  *Id.* at 2.  It alleges that on February 5, 2010, Wanda Patten effectively revoked his police arrest powers.  It also alleges that plaintiff was deprived of and denied promotions on four separate occasions.  Finally, it acknowledges that on May 28, 2009, plaintiff was transferred back to the warrant squad offices in accordance with the report and recommendation of a hearing examiner in his case before the PERB, who had found that the transfer away from those offices had been conducted in retaliation for his union activities.  *Id.* at 3.  The charge alleges that despite this, he was still physically separated and isolated from the internal affairs offices and the other investigators and

---

7       It appears that neither of these documents, if they exist, has been submitted to the Court.

clerical staff, and he was denied equal access to any of the vehicles assigned to the Internal Affairs Section.  *Id.* at 3–4.

- May 25, 2010:  Plaintiff was notified that his position would be terminated pursuant to an upcoming reduction in force ("RIF"), and he was placed on administrative leave.  Ex. K to Pl.'s Opp. [Dkt. # 69-18] ¶ 9.

- July 2, 2010:  Plaintiff's employment was terminated.  Pl.'s Opp. at 11.

- August 3, 2010:   Plaintiff filed an appeal of the RIF with the District of Columbia Government Office of Employee Appeals (OEA Case number 2401-0354-10).  Pl.'s Opp. at 12.

- November 6, 2010:  Plaintiff filed an employment intake questionnaire with the DCOHR.  Att. 1.F to Ex. 6 to Def.'s Mot. [Dkt. # 67-4].  The form states "Completing this intake questionnaire does not constitute the filing of a discrimination charge."  *Id.* at 1.  On the form, plaintiff indicated that he was discriminated on the basis of age based on the following issues:  retaliation, discharge, promotion, hostile work environment, failure to hire, violation of the district priority re-employment program preferences, and violation of federal veterans preference program.  *Id.* at 4.

- November 19, 2010:  Plaintiff filed a formal EEOC Charge of Discrimination based on retaliation.  Although the cover page for the charge is attached to defendant's motion for summary judgment as page seven of Attachment 1.F to Exhibit 6, and the signature page is attached to plaintiff's opposition to the motion for summary judgment as page fifteen of Exhibit J, it appears that the content of the charge has not been submitted to the Court.

- May 11, 2012:  Plaintiff filed his first amended complaint in this action.

- May 30, 2012: The PERB ruled on plaintiff's complaints in a combined decision and order.  The board upheld the findings of a hearing examiner that plaintiff's administrative leave period was warranted, but that plaintiff's reassignment to a different building was conducted in retaliation for filing the PERB complaint.  *Durant v. District of Columbia Dept. of Corr.*, Case Nos. 07-U-43 & 08-U-57, Opinion No. 1286, at 18–20 (PERB May 30, 2012).

The litigation in this Court has a tortured history.  Plaintiff filed his original complaint on January 6, 2010, against the District of Columbia, several District of Columbia officials, the United States Department of Justice, the United States Marshal Service, and the National Capital Regional Joint Fugitive Task Force.  [Dkt. # 1].  On March 31, 2011, after plaintiff failed to respond to the federal defendants' motion to dismiss, the court granted the motion as conceded

and dismissed the federal defendants.[8]   Order, [Dkt. # 23] at 6.   On the same day, the court

dismissed several of the claims against the remaining defendants.   Order, [Dkt. # 24] at 6–7.[9]

On October 5, 2011, plaintiff filed a motion for leave to file an amended complaint, [Dkt.

# 40].[10]   Defendant District of Columbia objected on grounds that (1) the proposed amended

complaint that plaintiff submitted as an attachment to the motion for leave to amend contained

counts that the Court had previously dismissed, and (2) two of the new claims were barred by the

statute of limitations.   Def.'s Opp. to Pl.'s Mot. to Am., [Dkt. # 42] at 3–4.   This Court granted

plaintiff's motion for leave to amend on April 23, 2012.   Order, [Dkt. # 57].   However, because

the Court agreed with defendant that the proposed amended complaint asserted some claims that

had already been dismissed by the Court with prejudice and other claims that the Court had

dismissed without prejudice, without establishing that that the proposed amendments cured the

deficiencies that led to the Court to dismiss them in the first instance, the Court declined to

---

8      Plaintiff filed the original complaint *pro se*, but has been represented by counsel since
January 17, 2011.   *See* Notice of Appearance [Dkt. # 14].

9      In addition, plaintiff filed a motion to amend his opposition to defendants' motion for
summary judgment, [Dkt. # 17], and an amended motion to amend his opposition to defendants'
motion for summary judgment, [Dkt. # 20].   The Court denied both by Minute Order on March
4, 2011.   Plaintiff then filed a second motion for leave to file an amended opposition [Dkt. # 26],
as well as a motion for reconsideration of the Court's denial of the amended motion to amend the
opposition, [Dkt. # 27], both of which the Court denied on May 20, 2011.   Order, [Dkt. # 28].

10     Plaintiff failed to file a reply in support of his motion within the time permitted under the
local rules, but instead, four days after the reply was due, he filed a motion for extension of time
to file the reply four days out of time.   [Dkt. # 44].   The Court denied the motion for extension of
time by Minute Order of November 17, 2011, explaining that plaintiff failed to raise any
justification whatsoever, and noting the many previous extensions that plaintiff had requested
and that the Court had granted in this case.   Plaintiff then filed a motion for reconsideration of
the Court's denial of the extension the next day.   [Dkt. # 45].   The Court granted the motion and
permitted plaintiff to file his reply in support of the motion to amend.   Minute Order (Nov. 21,
2011).

docket the proposed amended complaint that plaintiff had attached to his motion.  *Id.*  Instead, it authorized plaintiff to file a revised amended complaint by May 7, 2012.  *Id.*

Plaintiff did not file the revised amended complaint within the time permitted by the Court; rather, on May 10, 2012, he filed a motion for leave to file the amended complaint three days out of time.  [Dkt. # 60].  The Court granted the motion, [Dkt. # 62], and plaintiff filed the revised amended complaint on May 11, 2012.  [Dkt. # 63].  Count I, which has since been voluntarily dismissed by plaintiff, alleged discrimination and hostile work environment on the basis of age and race in violation of Title VII.  Count II alleged that defendant retaliated against plaintiff for filing his complaints in violation of Title VII and that it subjected him to a hostile work environment in retaliation for protected activities, also in violation of Title VII.[11]

Discovery closed on May 11, 2012, after four extensions to the original deadline. Defendant filed its motion for summary judgment on July 13, 2012.  [Dkt. # 67].  The motion has been fully briefed and is now before the Court.

One of the issues raised in the motion for summary judgment was the sufficiency of the evidence showing any monetary loss.  Mem. of Points and Authorities in Support of Def. District of Columbia's Mot. for Summ. J. [Dkt. # 67-3] ("Def.'s Mem.") at 19–22.  On October 3, 2012, plaintiff filed a supplemental Rule 26(a)(2)(B) expert report by Eric M. Sherman addressing

---

11      The Court notes that it has excused repeated late filings and mistakes in this case as it endeavored to give plaintiff every opportunity to articulate his claims, and that it has struggled throughout the pendency of this case to get plaintiff to identify the particular legal theory or theories on which his claims were based.  *See, e.g.*, Order granting plaintiff's motion for leave to amend the complaint [Dkt. # 57] ("Furthermore, the Court notes that the proposed amended complaint does not clearly identify the specific legal basis for the relief sought; rather it recites the facts and then lumps a number of state and federal statutes – including those underlying the claims already dismissed – in a single concluding paragraph.  The revised amended complaint must contain at least one clearly delineated count that identifies the particular legal basis – one per count – for plaintiff's remaining claim or claims . . . .").

plaintiff's monetary loss.  [Dkt. # 73].  The report was filed nearly five months after the close of discovery and over a year after the deadline for plaintiff to file expert reports.[12]  Defendant filed a motion to strike the supplemental report on December 14, 2012.  [Dkt. # 79].  That motion has also been fully briefed and is now before the Court.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party."  *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

---

12     In fact, plaintiff originally filed his expert designation without attaching a report. Although defendant filed a motion to strike, [Dkt. # 43], the Court denied the motion and gave plaintiff additional time to file the report.  Minute Order (Nov. 30, 2011).

## ANALYSIS

I.      **Plaintiff has identified a proper defendant.**

Defendant first argues that plaintiff has failed to designate a proper defendant in this action.  Although the Court agrees that plaintiff's amended complaint is not the model of clarity, it finds that plaintiff has properly identified the District of Columbia as the defendant.  "It is beyond peradventure that a 'noncorporate department or other body within a municipal corporation is not *sui juris*.'"  *Hinton v. Metro. Police Dep't, Fifth Dist.*, 726 F. Supp. 875, 875 (D.D.C. 1989), quoting *Braxton v. Nat'l Capital Hous. Auth.*, 396 A.2d 215, 216–17 (D.C. 1978).  Moreover, plaintiff does not assert that any provision of the D.C. Code provides for the Department of Corrections to be sued.  Accordingly, the proper party to this action is the District of Columbia.

Although plaintiff refers to the DOC as "defendant" throughout the amended complaint, the caption of the amended complaint lists "District of Columbia, *et al.*" as defendants.  The Court therefore finds that the District of Columbia has been properly named as a defendant in this action.  Moreover, since plaintiff concedes in his opposition to the motion for summary judgment that the District of Columbia is the proper defendant in this action and that the Department of Corrections is not an appropriate defendant, Pl.'s Opp. at 15, the Court will construe the amended complaint as asserting claims against only the District of Columbia.[13] This construction does not prejudice the District of Columbia as it has been litigating this case as a defendant since 2010 and has continued to act as a defendant in this case since the amended complaint was filed.

---

13      To the extent plaintiff intended to name DOC as a defendant in this action, the Court finds that it has been voluntarily dismissed, in accordance with *Hinton*, 726 F. Supp. at 875.

## II.     The Court will dismiss any part of the retaliation claim that is based on adverse actions taken against plaintiff prior to 2007.

Defendant also argues that to the extent Count II of the amended complaint claims that actions taken against plaintiff by DOC prior to October 2007 violated Title VII, those claims should be dismissed as time-barred.  Defendant points to a provision of Title VII that provides that an aggrieved employee must submit a charge of discrimination to the EEOC within 180 days of the allegedly unlawful incident, or within 300 days of the incident if the employee first presented the charge to a state or local equal opportunity agency.  42 U.S.C. § 2000e-5(e)(1).

In his opposition to defendant's motion to dismiss, plaintiff does not address this argument at all.  "It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *McMillan v. Wash. Metro. Area Transit Auth.*, -- F. Supp. 2d --, 2012 WL 4845641, at *3 (Oct. 12, 2012), citing *Howard v. Locke*, 729 F. Supp. 85, 87 (D.D.C. 2010).  Defendant asserts that the timeliness argument has therefore been conceded.  Def.'s Reply to Pl.'s Opp. [Dkt. # 71] ("Def.'s Reply") at 2.  The Court agrees.  Accordingly, the Court will grant this portion of defendant's motion and enter summary judgment for defendant on Count II of the amended complaint to the extent that it is based on any actions alleged to have been taken before October 2007.[14]

---

14     The Court notes also that there is no evidence in the record that would defeat defendant's motion for summary judgment on these grounds.  Plaintiff has not alleged – or submitted any evidence that would show – that he filed a charge of discrimination with the EEOC or the DCOHR before March 6, 2010.  *See* Pl.'s Opp. at 4–11 (setting out the complaints plaintiff allegedly lodged).

III.    **The Collective Bargaining Agreement Between the District of Columbia Department of Corrections and Fraternal Order of Police Department of Corrections Labor Committee does not deprive this Court of subject matter jurisdiction.**

Defendant next argues that this Court lacks subject matter jurisdiction over plaintiff's claims because plaintiff failed to follow the grievance procedures outlined in the Collective Bargaining Agreement between the District of Columbia Department of Corrections and its union, the Fraternal Order of Police Department of Corrections Labor Committee ("Collective Bargaining Agreement").[15]  Ex. 3 to Def.'s Mot [Dkt. # 67-4].  This argument has some force since plaintiff has previously characterized many of the same DOC actions that are complained of here as actions taken in retaliation for union activities.  *See, e.g.*, Ex. P to Pl.'s Opp.; *Durant v. District of Columbia Dept. of Corr.*, Case No. 07-U-43, Opinion Nos. 1286 & 08-U-57 (PERB May 30, 2012).  But in this case, plaintiff has cast his concerns as arising out of Title VII.

The Collective Bargaining Agreement provides that:

> Only an allegation that there has been a violation, misapplication, or misinterpretation of the terms of this Agreement or the applicable Compensation Agreement or disciplinary actions taken (written admonition, corrective or adverse action) shall constitute a grievance under provisions of this grievance procedure.   Any other employee appeals or complaints shall be handled exclusively by the appropriate administrative agency.

---

15      As a preliminary matter, the Court notes that it need not decide whether defendant's arguments that plaintiff has failed to exhaust the grievance procedures in either the Collective Bargaining Agreement or the Comprehensive Merit Personnel Act are jurisdictional or non-jurisdictional.  *Compare Munsell v. Dep't of Agric.*, 509 F.3d 572, 580 (D.C. Cir. 2007), citing *Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (finding that exhaustion requirements are not jurisdictional unless there is "sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion"), *with Johnson v. District of Columbia*, 552 F.3d 806, 811 n.2 (noting that the exhaustion requirement under the District of Columbia's Comprehensive Merit Personnel Act – which requires a plaintiff to follow either the grievance procedures set out in the act or those set out in an applicable collective bargaining agreement – is jurisdictional as applied by the D.C. Court of Appeals).

Ex. 3 to Def.'s Mot. at Art. 10 § 1. This provision does not expressly carve out charges of discrimination, but even defendant reads it as if it does: "[The Collective Bargaining Agreement] explicitly distinguishes discrimination charges from other forms of grievances, and states that discrimination charges are 'not subject to the negotiated grievance procedure' but must be presented 'to the appropriate administrative agency having jurisdiction over the matter." Def.'s Mem. at 13 n.5, citing Collective Bargaining Agreement, Art. 10, § 1. Since a claim alleging retaliation under Title VII is a type of discrimination claim, *see Gomez-Perez v. Potter*, 553 U.S. 474, 479–82 (2008) (finding in the context of the Age Discrimination in Employment Act of 1967 that retaliation based on a complaint of discrimination is a form of discrimination), defendant's concession suggests that the grievance procedures in the Collective Bargaining Agreement do not apply to plaintiff's claims in this case.

Moreover, plaintiff's claims do not appear to fall within the categories of allegations described in the operative paragraph of the Collective Bargaining Agreement. Plaintiff challenges various actions taken by his employer on the grounds that they were taken in retaliation for activity protected by Title VII. This is not an allegation of a violation, misapplication, or misinterpretation of the terms of any agreement, but rather an allegation of improper retaliation in violation of a federal statute. Nor is this a challenge to disciplinary actions. The alleged actions taken by defendant that plaintiff challenges – the termination of his job through an RIF, his placement on administrative leave pending termination, his placement in an isolated office, denials of promotions, and failure to inform him about vacancies – are undesirable, but there is no evidence that they were disciplinary in nature.[16] Accordingly, under

---

16    The only action challenged by plaintiff that is arguably "disciplinary" is the letter of admonition from plaintiff's supervisor Wanda Patten. Ex. G to Pl.'s Opp.; *see* Pl.'s Opp. at 26. However, the Court need not address whether this part of plaintiff's claim should be dismissed

article 1, section 10 of the Collective Bargaining Agreement, they should be handled exclusively by the appropriate administrative agency, and in this case they were submitted in the first instance to the EEOC.

The cases that defendant cites are all distinguishable from the present case. *Hughes v. CACI, Inc.-Commercial*, 384 F. Supp. 2d 89, 97–98 (D.D.C. 2005), and *Booker v. Robert Half International, Inc.*, 315 F. Supp. 2d 94, 97 (D.D.C. 2004), both stand for the proposition that where a valid binding contract between an employer and an employee sets out an alternative grievance procedure for a discrimination claim, that provision is not superseded by the EEO process. As the District suggests in its own footnote – and as explained above – the Collective Bargaining Agreement invoked here does not set out an alternative grievance procedure for a discrimination claim. Similarly, in *Carson v. Sim*, 778 F. Supp. 2d 85, 94 (D.D.C. 2011), the court held that the plaintiff was required to resolve a claim that his employer breached his employment contract, as codified in a collective bargaining agreement, through the grievance procedure established by the agreement. Although the court also dismissed the plaintiff's Title VII claims, it did so for an entirely separate reason: the plaintiff had failed to exhaust his administrative remedies with the EEOC.[17] *See id.* at 98. And in *Artis v. Greenspan*, 158 F.3d 1301, 1306–08 (D.C. Cir. 1998), the court held that in order to fully exhaust their claims before bringing a class action, the plaintiffs were required to provide sufficient details during the administrative counseling process to allow the employer to right its alleged wrongs. None of these cases supports the defendant's argument that the Collective Bargaining Agreement at issue

---

for failure to exhaust the Collective Bargaining Agreement grievance procedures because it will grant summary judgment for defendant on other grounds.

17     The Court takes some issue with defendant's characterization of *Carson* as "dismissing plaintiff's claims under Title VII, Americans with Disabilities Act and common law claims for failing to exhaust remedies under the collective bargaining agreement." Def.'s Mem. at 12.

here requires the use of the prescribed grievance procedure for the Title VII retaliation claims that plaintiff makes.  So the case will not be disposed of on those grounds.

**IV.     The District of Columbia Government Comprehensive Merit Personnel Act does not deprive this Court of subject matter jurisdiction.**

Defendant's argument that the District of Columbia Government Comprehensive Merit Personnel Act ("CMPA"), D.C. Code §§ 1-601.01–1-607.08 (2001), preempts this Court's jurisdiction over plaintiff's retaliation claim is also flawed.  Although the CMPA is the exclusive remedy for nearly all work-related complaints of District of Columbia public employees, *see Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 1997), it is not the remedy for discrimination complaints, such as those arising under Title VII.  *See King v. Kidd*, 640 A.2d 656, 664 (D.C. 1993), quoting D.C. Personnel Regulations § 1632.1(*o*), 34 D.C. Reg. 1845, 1878 (1987) (explaining that the District of Columbia Personnel Regulation concerning "adverse actions" and "grievances" covered by the CMPA expressly excludes from employee grievance procedures "[a]n allegation of unlawful discrimination, or any matter within the jurisdiction of the D.C. Office of Human Rights.").

Defendant does not appear to disagree with that statement.  Rather, it argues that plaintiff's alleged protected activities "are not the type contemplated by Congress under Title VII."  Def.'s Mem. at 16.  And defendant maintains that the protected activities that plaintiff alleges prompted a retaliatory response are more properly classified as union grievances, for which the CMPA is the exclusive remedy.  *Id.* at 16–18.  As the Court has already noted, this is certainly a fair characterization of the first several rounds of complaints filed by Mr. Durant.  For some time, plaintiff expressly complained that he was the subject of retaliation and coercion due to protected collective bargaining activities.  But the amended complaint before this Court, which followed charges lodged with the EEOC invoking Title VII, is styled as an action arising

under Title VII, and the Court must assess it under that statutory framework.  And, even though the amended complaint challenges some of the same conduct that plaintiff previously labeled as an unfair labor practice, it is based on some other events as well.  So the Court will not enter judgment for defendant on this basis either.  This brings us to the merits of plaintiff's claims.

**V.    The termination of plaintiff's employment is the only action that rises to the level of an adverse employment action.**

A.    The legal framework for assessing the evidence

Title VII retaliation claims are evaluated under the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 792 (1973).  Under the *McDonnell Douglas* framework, a plaintiff bears the burden of making a *prima facie* showing of retaliation.  *Id.*  Once that showing has been made, the burden shifts to the defendant to produce a "legitimate, nondiscriminatory reason" for its actions.  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (internal quotation marks omitted).  If the employer makes this showing, then "the burden-shifting framework disappears," *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004), and the question before the court is "whether a reasonable jury could infer . . . retaliation from all the evidence."  *Id.*

In order to make a *prima facie* showing of retaliation, plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  *Jones*, 557 F.3d at 677; *see also Taylor v. Solis*, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009).

At the summary judgment stage, however, if the employer produces a legitimate nondiscriminatory reason for its actions, "'the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*.'"  *Jones*, 557 F.3d at 678, quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir.

2008).   The central question becomes whether the plaintiff produced evidence sufficient for a reasonable jury to find that the employer's stated reason for the adverse action was not the actual reason and that the employer actually retaliated against the plaintiff.  *See Brady*, 520 F.3d at 495. In assessing this question, the court considers "all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation." *Jones*, 557 F.3d at 677 (internal quotation marks and citations omitted).

### B.  The elements of an adverse employment action

To prove a retaliation claim under Title VII, a plaintiff must show "materially adverse action" by his employer.   *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). Materially adverse actions "encompass a broader sweep of actions than those in a pure discrimination claim," *id.* at 1198 n.4, because they are "'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse,'" *id.*, quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006).  Thus, to be "materially adverse," an action need only be of the type that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68, quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006).

Defendant first argues that plaintiff has failed to make a showing that he suffered an adverse employment action that is actionable under Title VII because he has not demonstrated that he suffered lost wages as a result of any of defendant's actions.  Def.'s Mem. at 19–21.  This

is an overly narrow construction of what constitutes a materially adverse action and does not comport with the standard described above.

Defendant has also argued that "[a]ny assertion that Plaintiff's duties and responsibilities changed so as to constitute an adverse employment action must be rejected." Def.'s Mem. at 21. For the most part, the Court agrees. Despite the fact that plaintiff need not demonstrate lost wages *per se* in order to demonstrate that an action is materially adverse, the Court finds that many of the actions plaintiff cites are not materially adverse under the *Burlington Northern* standard. Plaintiff has identified the following allegedly adverse actions:

> **1. Plaintiff was placed on administrative leave with pay in June through August 2007 after the photocopy incident; and upon plaintiff's return in August 2007, he was transferred to the Grimke Building instead of returning to the Warrant Squad office. Pl.'s Opp. at 26, 29.**

Since these actions occurred between June and August 2007, and the Court has already found that plaintiff is barred from claiming a Title VII violation for any action before October 2007, the Court need not address these allegations.

> **2. On May 6, 2008, plaintiff received a "letter of admonishment" based on the fact that his supervisor had been unable to contact him during non-duty hours. Pl.'s Opp. at 26, 29–30; Ex. G to Pl.'s Opp.**

Plaintiff does not allege that the letter of admonishment in any way affected the terms and conditions of his employment or caused him any harm that would dissuade a reasonable person from filing a complaint of discrimination. Rather, the letter simply warns that "future violations will result in corrective or adverse action." Ex. G to Pl.'s Opp. at 1. In this circuit, evaluations and written warnings do not constitute materially adverse actions unless they have "tangible job consequences." *Baloch*, 550 F.3d at 1199, citing *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005). But plaintiff does not offer any evidence showing that the admonition had any consequences at all, whether for his job responsibilities, advancement

opportunities, or anything else.  Accordingly, this is not a sufficiently adverse action to form the basis of a retaliation claim under Title VII.

### 3.  On May 19, 2008, plaintiff was not permitted to use a government vehicle.  Pl.'s Opp. at 26.

As evidence of this, plaintiff submits a memorandum that he wrote to his supervisor Wanda Patten, explaining that "[a]s my duties and responsibilities as a warrant squad criminal investigator involves [sic] address checks and or surveillance.  [sic] I do not have any vehicle assigned to perform that and any of my other duties and responsibilities."  Ex. N to Pl.'s Opp. at 1.  Although plaintiff claims in the memorandum that the lack of a vehicle interfered with his ability to perform his job, he has not submitted any evidence that his alleged inability to access a vehicle had any tangible consequences.  For example, he does not show – or even allege – that he failed to complete any particular assignments because he could not access a vehicle, or that this resulted in negative performance reviews or deprived him of promotions.  *Cf. Baloch*, 550 F.3d at 1199.  Accordingly, the Court finds that plaintiff has not submitted sufficient evidence to show that this alleged action rises to the level of a materially adverse action.

### 4.  On June 1, 2009, plaintiff was transferred back to the Warrant Squad Offices, but was placed in a separate office, isolated from the rest of the Warrant Squad.  Pl.'s Opp. at 26.

First, plaintiff has not pointed to any evidence that shows even that he was actually placed in a separate office, that he was isolated, or that his isolation affected his performance of his job.  Rather, he relies entirely on conclusory, unsupported assertions in his opposition to the motion for summary judgment.  Pl.'s Opp. at 26 (stating that the DOC "kept [him] isolated from the remaining members of the Warrant Squad" and that his "duties and responsibilities were severely limited").  Plaintiff cites no evidence to support these assertions and the Court is not required to scour the record for evidence on his behalf.  *See* Fed. R. Civ. P. 56(c)(3) ("The court

need consider only the cited materials, but it may consider other materials in the record."); *see also Martinez v. Puerto Rico Fed. Affairs Admin.*, 813 F. Supp. 2d 84, 96 n.10 (D.D.C. 2011). But even if plaintiff had adduced some evidence of these changes to his conditions of employment, he has not come forward with any evidence that would show that the office transfer had tangible consequences that would dissuade a reasonable person from filing a complaint of discrimination. For example, there is no evidence that it resulted in bad performance reviews, a failure to be promoted, a reduction in salary, a reduction in job responsibility, or anything else.

Since it is plaintiff's burden at this stage to come forth with evidence showing that there is a genuine dispute of material fact, and plaintiff has not provided any evidence on which the Court could find that plaintiff's placement in an isolated office in June 2009 constitutes a materially adverse employment action, the Court cannot find that plaintiff's claim succeeds on that ground. *See Tarpley v. Greene*, 684 F.2d 1, 6 (D.C. Cir. 1982) (stating that under Federal Rule of Civil Procedure 56(e) and the local rules of this Court, a plaintiff "may not rest upon the mere allegations or denials of his pleadings . . . .").

> **5. In 2010, the DOC suspended plaintiff's arrest powers and authority as a Warrant Squad Criminal Investigator, subjected him to isolation and assignment to limited administrative duties, and denied him job upgrades and promotions. Pl.'s Opp. at 26.**

Again, plaintiff does not point to any evidence that would show that DOC engaged in activity that would dissuade a reasonable worker from bringing a charge of discrimination. In his opposition to the motion for summary judgment, plaintiff relies entirely on unsupported assertions about what happened and how it affected him. Pl.'s Opp. at 26–27. The Supreme Court has held that "reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's

position, considering all the circumstances.'" *Burlington N.*, 548 U.S. at 71, quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (some internal quotation marks omitted).  Yet plaintiff cites no evidence in the record that would illuminate the circumstances or the consequences of these events.  Accordingly, the Court cannot find that he has sustained his burden of showing that the circumstances of the transfer rise to the level of an adverse action.

As to the alleged denial of job upgrades and promotions, the Court finds that plaintiff has not designated any facts showing that there is a genuine issue for trial, as the *Celotex* standard requires.  Plaintiff has produced no evidence that he applied for any particular job or that his application was denied.  Similarly, there is no evidence that he was denied a promotion or overlooked when others were being promoted.  Accordingly, the Court cannot find that plaintiff has established a genuine dispute of material fact as to whether he suffered these allegedly materially adverse actions.

### 6. In 2010, plaintiff's employment was terminated through an alleged RIF. Pl.'s Opp. at 26–29.

This is the only allegation of an adverse employment action for which evidence has been presented that satisfies this key element of a Title VII case.  Plaintiff provides the Court with the agency's response to his appeal of the reduction in force before the District of Columbia Office of Employee Appeals.  Moreover, the portions of plaintiff's deposition that defendant submits contain plaintiff's testimony about the termination of his employment.  Ex. 1 to Def.'s Mot. at 192, 194–96.  Termination of employment clearly constitutes a materially adverse action.  *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).

**7. After receiving notice of the RIF and before his employment was terminated, plaintiff was escorted from his place of employment and put on administrative leave.  Pl.'s Opp. at 26–27.**

Once again, plaintiff does not supply sufficient evidence to support this allegation, or to show that he experienced any adverse consequences as a result.  He does not even allege – much less, provide evidence that shows – that the administrative leave period was unpaid.  Moreover, although plaintiff asserts in his opposition to the motion for summary judgment that being escorted from his office was "humiliating and degrading," Pl.'s Opp. at 27, he does not offer any evidence of negative consequences flowing from that event:  he does not show whether his co-workers witnessed the event, whether the escort was forceful, or whether there were any other aspects of how his discharge was effected that would "dissuade a reasonable worker" from bringing a charge of discrimination.  *Compare Greer v. Paulson*, 505 F.3d 1306, 1317–18 (D.C. Cir. 2007) (holding that suspension with back pay was materially adverse because plaintiff presented evidence of a demonstrable effect involving objectively tangible harm, which included personal bankruptcy, two real estate foreclosures, and negative marks on her employment record), *with Harper v. Potter*, 456 F. Supp. 2d 25, 29 (D.D.C. 2006) (holding seven-day suspension was not materially adverse because although it was disciplinary in nature, plaintiff was able to remain on the job and in pay status); *see also Boykin v. England*, No. 02-950, 2003 WL 21788953, at *5 (D.D.C. July 16, 2003) (notice of proposed removal is not materially adverse because it is essentially a precursor to a decision to remove).  Accordingly, the Court finds that plaintiff has not raised a genuine dispute of material fact as to whether he suffered this alleged materially adverse action either.

**8.  DOC withheld job vacancy announcements from plaintiff and did not provide him with preferential placement opportunities.  Pl.'s Opp. at 27.**

Yet again, this assertion is unsupported by evidence.  As to the alleged withholding of vacancy announcements, plaintiff does not proffer the vacancy announcements or identify the opportunities that were available.  And as to the allegation that he was denied preferential placements, he fails to identify any placements that were available or show that he was qualified for them.  Rather, in his opposition to the motion for summary judgment, he simply lists several individuals who he alleges received employment opportunities in his stead.  Pl.'s Opp. at 30–31.  And the only piece of evidence he cites in support of these assertions is his own "first amendment to the unfair labor practice complaint" that he filed before the PERB.  Ex. P to Pl.'s Opp.  In other words, the only material plaintiff musters in opposition to the motion for summary judgment is simply a previous unsworn iteration of his own conclusory allegations, submitted to another forum.  Defendant says:  "plaintiff's references to his previously filed complaints with the EEOC cannot be the basis for which triable issues can be created."  Def.'s Reply at 4.

The Court observes at the outset that this document does little to advance plaintiff's Title VII case because it specifically characterizes the complained-of hiring decisions as unfair labor practices that retaliated for plaintiff's collective bargaining activities, and it references provisions in the Collective Bargaining Agreement that were violated by the DOC.  If anything, it seems to support defendant's position that at bottom, this case concerns matters that should be taken up under the Collective Bargaining Agreement or the CMPA.

Plaintiff has not supplied the Court with an affidavit or declaration indicating that he has personal knowledge of the facts set out in the First Amendment to the PERB complaint.  He has not submitted the job vacancy announcements in question or explained why he did not apply for

the jobs he complains were given to others.  And, he did not advise the Court of any efforts he may have made during the discovery period in this case to obtain material that would have related to these claims.

In ruling on a motion for summary judgment, the Court is required to draw all justifiable inferences in the nonmoving party's favor, and it must accept the nonmoving party's evidence as true.  *Anderson,* 477 U.S. at 255.  But the filing of a summary judgment motion requires the nonmoving party to "designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, and the nonmoving party must establish more than "the mere existence of a scintilla of evidence."  *Anderson,* 477 U.S. at 252.[18]  At this stage in the proceedings, plaintiff cannot expect the Court do all of the work for him.  Accordingly, the Court finds that plaintiff has failed to designate specific facts showing there is a genuine issue for trial on any of the alleged adverse employment actions except for the termination of his employment.

The remaining question, then, is whether plaintiff has come forward with sufficient evidence to create a triable issue on the question of whether DOC's RIF was merely pretextual or whether it was retaliatory.

**VI.     Plaintiff has failed to produce evidence sufficient for a reasonable jury to find that the RIF was mere pretext and that plaintiff's job was actually terminated in retaliation for his participation in protected activity.**

Defendant argues that plaintiff has failed to establish any nexus between the termination of his employment and the allegedly protected activities in which he engaged.  Def.'s Mem. at 18.  The Court agrees.

---

18     In any event, even if the Court were to conclude – based on plaintiff's unsworn statements to the PERB alone – that there are facts in the record to create a genuine dispute about whether the plaintiff  was  actually denied certain job opportunities, and whether those denials constituted adverse employment actions, plaintiff has not  responded to the summary judgment motion by producing the evidence that would support his claim that those actions were retaliatory.

Defendant has produced a legitimate nondiscriminatory reason for its actions – an agency reduction in force.  The agency's response to plaintiff's appeal of the RIF before the Office of Employee Appeals, which plaintiff submits in support of its case, explains that due to budgetary constraints, thirteen positions were subject to a reduction of force based on the programs whose functions would have the least negative impact on the agency's ability to perform its mandated functions.  Ex. K to Pl.'s Opp. at 1–2.  As a result, the entire warrant squad was eliminated.  *Id.* Therefore, the Court's sole job at this stage is to determine whether the plaintiff produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason for the adverse action and that the employer actually retaliated against the plaintiff. *Brady*, 520 F.3d at 495.

Plaintiff relies on temporal proximity to show causation.  He asserts that "within one month from the date [he] filed the present action with the Court [(January 6, 2010)], his arrest powers and Warrant Squad authority were suspended (February 5, 2010); he was placed in isolation from his colleagues and removed from resources necessary to carry out his job functions; he was denied job upgrades/promotions (April 2010); [and] he was terminated his [sic] employment through an alleged RIF . . . ."  Pl.'s Opp. at 33–34.   But the evidence that plaintiff has put forward does not reflect that everything took place within the span of a month. According to the chronology that plaintiff himself provides, he was notified of his termination four months after he filed the original complaint in this action, and the termination actually took place two months after that.  Even at the *prima facie* stage, courts in this district generally require closer temporal proximity in order to establish causation in the absence of direct evidence.  *See Harris v. D.C. Water and Sewer Auth.*, -- F. Supp. 2d --, 2013 WL 518641, at *4 (D.D.C. Feb. 13, 2013) (summarizing the precedent to show that courts in this district have

rejected intervals of two and a half months, three months, five months, and ten months as establishing temporal proximity).

Moreover, while mere temporal proximity might be sufficient to establish the causation prong of a *prima facie* case of retaliation, proximity alone is insufficient to prove that defendant's legitimate non-retaliatory reasons are pretextual. *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) ("Although an adverse action that occurs shortly after the protected activity can be part of a finding of retaliation, positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine[.]") (citations and internal quotation marks omitted).

Plaintiff has not provided any affirmative evidence that the RIF was pretextual.  In fact, in his deposition, plaintiff admits that the entire warrant squad was abolished in the reduction in force, not just his position within the warrant squad.  Durant Dep. at 195:8–10 ("Q:  Well, let me ask you this:  Was the warrant squad abolished?  A:  Yes it was – well, yes."); Durant Dep. at 195:22–196:3 ("Q:  [D]id the warrant squad itself, the warrant squad still exist after the RIF?  A: No.").  Plaintiff contends that after DOC terminated the employees in the warrant squad, it hired correctional officers to perform the duties of the warrant squad.  Durant Dep. at 195:20–21. Even if the Court accepts that statement as true, the fact that the department transferred the duties of the warrant squad employees to different employees in the department does not show that the RIF was pretext for retaliation against plaintiff for filing the complaint in this action.  *See Globus v. Skinner*, 721 F. Supp. 329, 336 (D.D.C. 1989) (finding that the plaintiff's showing that the agency did not take into account in its RIF calculations the fact that it would seek approval for certain new hires does not "discredit the reasons for the RIF, establish that they were pretextual, or prove that they were motivated even in part by a retaliatory motive.").

Accordingly, since the Court finds that plaintiff has failed to put forth any evidence of a materially adverse action other than the termination of his employment, and he has failed to establish evidence that the reduction in force was pretext such that a reasonable jury could find that defendant's stated reason was not the actual reason for the termination of his employment and that defendant actually retaliated against him, the Court will grant defendant's motion for summary judgment as to the part of Count II that claims plaintiff suffered discrete acts of retaliation by his employer.

### VII. Plaintiff fails to show that a dispute of material fact exists as to whether defendant created a hostile work environment.

The only remaining claim alleges that defendant subjected plaintiff to a hostile work environment in retaliation for his protected activities.

To make out a hostile work environment claim, a plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). To determine "whether an actionable hostile work environment claim exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), quoting *Harris*, 510 U.S. at 23; *see also Baloch*, 550 F.3d at 1201. This standard "ensure[s] that Title VII does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, (1998) (internal citation and quotation marks omitted).

Plaintiff spends four pages of his opposition to the motion for summary judgment arguing that a genuine dispute of material fact exists as to whether plaintiff's work environment was hostile and as to whether the hostile work environment was linked to his protected activity. *See* Pl.'s Opp. at 36–40. However, in making this argument, not once does plaintiff cite to the record. Rather, he continues to make unsupported conclusory assertions about what happened to him. *See, e.g.*, *id.* at 38 ("First, it is clear from the record in this case that Mr. Durant subjectively perceived a hostile working environment. He filed repeated claims for relief, and attempted to obtain assistance from various sources. He was routinely subjected to isolation away from his colleagues and the tools necessary for him to carry out his duties. He was continually subjected to threats to his employment, admonishments, suspensions of arrest powers/authority, and placed on involuntary leave . . . .").[19] Accordingly, the Court finds that plaintiff has failed to put forth sufficient evidence that would create a genuine question as to whether defendant created a hostile work environment. *See* Fed. R. Civ. P. 56(c)(3).

Moreover, the Court cannot find that plaintiff has established a sufficient causal link between the allegedly hostile work environment and his protected activity. Even if one assumes that all of the complaints to the EEO coordinator for DOC and to the EEOC that plaintiff has submitted as exhibits to his opposition are actually protected under Title VII, plaintiff has failed to adduce more than mere temporal proximity between the filing of those complaints and some of the allegedly hostile actions. And in opposing the motion for summary judgment on the hostile work environment claim, plaintiff simply refers the Court to the discussion of causation in the section of the opposition dealing with discrete retaliatory actions. As the Court has

---

19    Moreover, plaintiff cannot argue that he was relying on the "Statement of Facts" section of his opposition to provide the correct citations because that section does not cite to admissible evidence that would support his assertions either.

already discussed, temporal proximity alone is not enough to raise a genuine dispute of material fact over causation.

Moreover, plaintiff has provided the Court as exhibits numerous previous complaints that he wrote, in which he attributed his treatment by DOC officials to retaliation for his collective bargaining activities, and in which he alleged that his environment became hostile for those reasons before he ever engaged in the particular activity that he asserts is protected by Title VII. This undermines his argument that the hostile work environment was motivated by retaliation for the EEOC complaints.

A court in this district has noted that "opposition to an unlawful employment practice qualifies as protected activity even if it may have occurred outside of the EEO context." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77 n.7 (D.D.C. 2007), quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (internal quotation marks omitted). However, the complaint must in some way allege discrimination made unlawful by Title VII. *Williams v. Spencer*, 883 F. Supp. 2d 165, 177 (D.D.C. 2012), citing *Broderick*, 437 F.3d at 1232; 42 U.S.C. § 2000e-3(a). Accordingly, the complaints and reports that plaintiff identifies as his "protected activities" must have in some way alleged discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. §§ 2000e-2, 2000e-3(a).

Under that framework, the first protected act that appears in the record is the memorandum plaintiff sent to the DOC's EEOC coordinator on October 17, 2007. Ex. E to Pl.'s Opp. at 1. Yet, plaintiff alleges that the hostility began in June 2007, when he was put on administrative leave. Pl.'s Opp. at 25–26, 37. So even if the Court were to find that plaintiff has identified sufficient evidence to show that he faced a hostile work environment, it cannot find that he has met his burden of showing that genuine issue of material fact exists about whether the

cause of the hostility was retaliation for his protected activity.  *See Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009) ("The fact that the allegedly retaliatory actions preceded the protected activity precludes a determination that the protected activity caused the defendant to retaliate against the plaintiff.").

## CONCLUSION

Accordingly, the Court will grant defendant's motion for summary judgment in full.  As a result, it will dismiss the pending motion to strike as moot.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  March 25, 2013